[No. B080924. Second Dist., Div. Three. Dec. 1, 1995.]

GARY RUNYAN, Plaintiff and Respondent, v.
WILLIAM C. ELLIS, as Chief of Police, etc., et al., Defendants and
Appellants.

**COUNSEL**

James E. Trott and Larry J. Roberts for Plaintiff and Respondent.

John R. Calhoun, City Attorney, and Linda L. Daube, Deputy City Attorney, for Defendants and Appellants.

**OPINION**

**ALDRICH, J.—**

### INTRODUCTION

Respondents, the City of Long Beach (the City), the City's Manager, James C. Hankla and the City's Chief of Police, William C. Ellis (the Chief), appeal from the grant of a peremptory writ of mandate ordering them to

provide petitioner, Gary Runyan, a police officer with the City, an administrative appeal before the City's civil service commission in accordance with the Public Safety Officers' Procedural Bill of Rights Act (hereinafter the Bill of Rights Act). (Gov. Code, § 3304, subd. (b).)[1] Because we hold the writ was properly issued, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

In June, 1992, the police department for the City filed an internal affairs complaint against Runyan for deficiencies in his performance. On September 28, 1992, the City sent a formal letter of reprimand listing six incidents of alleged failure on Runyan's part to meet the police department's standards as a peace officer. Runyan was notified the City would take the disciplinary measure of temporarily transferring him for 90 days from the patrol bureau, field support division to the patrol bureau, east division, team 24 and reduce his pay. Runyan was also notified of his right, pursuant to the memorandum of understanding (MOU) between the City and the Long Beach Police Officers Association, to appeal the disciplinary action to the city manager or his designee. (MOU, art. VIII, § III, subd. D.2, par. 2.)

Runyan requested an administrative appeal before the City's civil service commission but his request was denied. Runyan filed a second formal request for administrative appeal before the civil service commission. The second request for appeal before the civil service commission was also denied.

Runyan filed his petition for peremptory writ of mandate, pursuant to section 1085 of the Code of Civil Procedure, seeking to force the civil service commission to provide Runyan with an administrative appeal as the result of his punitive transfer to a lower paying position.

The City, its manager and the Chief responded to the petition by opposing it on three grounds: (1) the bargained-for MOU; (2) the "home rule" provisions of the Constitution; (3) the rules of the civil service commission which do not provide Runyan with an administrative appeal before it.

The trial court granted Runyan's petition for peremptory writ of mandate and ordered the respondents to provide an administrative appeal before the

---

[1]All further statutory references are to the Government Code unless otherwise indicated.

civil service commission in accordance with section 3304, subdivision (b). Respondents filed this timely appeal.

## DISCUSSION

■ The issue respondents raise in this appeal is whether Runyan had a right to an administrative appeal before the City's civil service commission pursuant to the Bill of Rights Act, the City's charter, and the civil service rules.

"In determining the scope of coverage under the [Bill of Rights] Act, we independently determine the proper interpretation of the statute and are not bound by the lower court's interpretation. [Citation.]" (*Binkley* v. *City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806 [20 Cal.Rptr.2d 903].)

The Bill of Rights Act "provides a catalogue of basic rights and protections which must be afforded all peace officers by the public entities which employ them." (*Binkley* v. *City of Long Beach, supra,* 16 Cal.App.4th at p. 1805, fn. omitted; *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 679 [183 Cal.Rptr. 520, 646 P.2d 191].)

One such basic protection is the right to an administrative appeal of punitive actions. Section 3304, subdivision (b) of the Bill of Rights Act provides, "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency without providing the public safety officer with an opportunity for administrative appeal."

We conclude Runyan had a right to an administrative appeal because his 90-day transfer with accompanying cut in pay was "punitive action" pursuant to section 3303. (See also *White* v. *County of Sacramento, supra,* 31 Cal.3d at pp. 681-683.) Section 3303 defines punitive action as "any action that may lead to dismissal, demotion, suspension, *reduction in salary*, written reprimand, or *transfer for purposes of punishment*." (Italics added.) The action taken against Runyan was a transfer for purposes of punishment for the numerous instances of infractions and resulted in a reduction in pay. As he was subjected to punitive action, Runyan had a right to an administrative appeal.

While respondents do not deny Runyan had a right to an administrative appeal, they contend Runyan had no "absolute right" to a hearing before the

civil service commission. Respondents argue the City strictly complied with the provisions of the civil service rules and the MOU with the result they satisfied the procedural due process requirements of the Bill of Rights Act.

"Section 3304 requires only that an *opportunity* for administrative appeal be provided. It does not specify how the appeal process is to be implemented. [Citation.]" (*Binkley* v. *City of Long Beach, supra,* 16 Cal.App.4th at p. 1806.) Here, the MOU requires "[t]he employee shall have the right to appeal the discipline in writing to the City Manager or his designee within ten (10) days of receiving written notice of transfer. The City Manager or his designee will schedule a meeting with the employee within five days of receiving notice from the employee. [¶] E. The City Manager's decision under Section III, C. and D. above is final." We conclude, while the meeting is a necessary part of the appeal process, it is nevertheless insufficient to fulfill due process requirements.

Runyan correctly argues respondents are collaterally estopped to relitigate the adequacy of the meeting with the manager under the MOU. Pursuant to rule 977(b)(1) of the California Rules of Court,[2] Runyan cites an unpublished opinion issued by this division of this district court in the case entitled *Stowe* v. *City of Long Beach* (Feb. 19, 1992) B053521. A review of this opinion reveals the case does involve the same City, city manager and the police chief, construction of the identical provision of the MOU in conjunction with the identical section 3304 of the Bill of Rights Act now before us. Further, the issue there was decided on its merits and on a similar factual basis as the case here. Hence, the City is estopped to relitigate the sufficiency of the administrative appeal process under article VIII, section III, subdivision D.2, paragraph 2 of the MOU. (*Verdugo Hills Hospital, Inc.* v. *Department of Health* (1979) 88 Cal.App.3d 957, 962, fn. 6 [152 Cal.Rptr. 263].)[3]

In *Stowe* v. *City of Long Beach, supra,* B053521, we addressed this issue affirming the trial court's ruling the police officer had a right to an administrative appeal before the civil service commission. Stowe was a probationary sergeant in the City's police department who was demoted to corporal

---

[2]California Rules of Court, rule 977 provides, "(a) An opinion that is not ordered published shall not be cited or relied on by a court or a party in any other action or proceeding except as provided in subdivision (b). . . . [¶] (b) Such an opinion may be cited or relied on; [¶] (1) when the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel. . . ."

[3]In light of this decision, respondent's contention they have complied with the MOU is disingenuous. *A different panel of this court has already held a police officer in the City who is subject to disciplinary action has a right to an administrative appeal pursuant to the Bill of Rights Act.*

with the accompanying salary reduction. Stowe first met with the City manager and then sought an administrative appeal of his demotion before the same civil service commission. The comission refused to hear Stowe's appeal. The trial court issued a peremptory writ of mandate pursuant to Code of Civil Procedure section 1094.5. Just as they do here, the City, the manager and the Chief argued that the hearing under the MOU satisfied the requirements of the Bill of Rights Act. We disagreed, stating, "This contention is also devoid of merit. A review of the written transcript for the 'hearing' given to Stowe shows that it was in no way the evidentiary type of appeal process envisioned by section 3304, subdivision (b). . . . [¶] There was no sworn testimony by anyone at the hearing. Stowe and his attorney simply presented their position on Stowe's demotion and answered the questions put to them by the City Manager and the Deputy City Attorney, two people who can hardly be considered to be disinterested, neutral factfinders. No one from the City's 'side' made any presentation. Without a presentation by his opposition, Stowe had no way of responding to the City's position; in fact, he had no way of knowing just what that position was." Based on our opinion in *Stowe*, we conclude the MOU does not comply with the requirements of section 3304, subdivision (b).

Respondents nevertheless argue the trial court's ruling Runyan must have a hearing before the civil service commission violates the "home rule" provision of the state Constitution.

We recognize the City is a charter city, governed by the "home rule" provisions of the California Constitution, article XI, section 5.[4] The Bill of Rights Act ". . . was not intended to interfere with a charter city's right to regulate peace officers' qualifications for employment, or the causes for which they may be removed. [Citation.] Nor was the Act intended to abrogate the powers granted charter cities by article XI, section 5 of the

---

[4]Article XI, section 5 of the California Constitution provides, in relevant part, "(a) It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith. [¶] (b) It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) the constitution, regulation and government of the city police force . . . (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein . . . the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, . . . and for the compensation method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees."

California Constitution [citation], including the right to terminate a peace officer's employment at will, without a showing of 'just cause.' [Citations.]" (*Binkley* v. *City of Long Beach, supra*, 16 Cal.App.4th at p. 1806.)

Nevertheless, as the court in *Binkley* went on to note, "The limited purpose of an administrative appeal under section 3304 is to give the peace officer subjected to punitive action an opportunity 'to establish a formal record of the circumstances surrounding his termination' [citation], and 'to attempt to convince the employing agency to reverse its decision, either by demonstrating the falsity of charges which led to punitive action, or through proof of mitigating circumstances.' [Citation.]" (*Binkley* v. *City of Los Angeles, supra*, 16 Cal.App.4th at p. 1806.) In short the Bill of Rights Act comes into play whenever a public employer fires or takes punitive action against a peace officer. "[T]here can be no doubt that the [A]ct is concerned primarily with affording individual [peace] officers certain procedural rights during the course of proceedings which might lead to the imposition of penalties against them. . . ." (*White* v. *County of Sacramento, supra*, 31 Cal.3d at p. 681.)

Reconciling the home rule provisions with section 3304, we therefore conclude Runyan was required to seek a meeting with the city manager pursuant to subdivision (d) of section III of article VIII of the MOU. However, while such a meeting is necessary, it is not sufficient to meet the administrative appeal requirements of section 3304, subdivision (b).

Given the only existing apparatus in the city for an administrative appeal by police officers is found with the civil service commission, and pursuant to our opinion in *Stowe*, Runyan is entitled to an administrative appeal before the civil service commission.

Runyan insists we establish the parameters of the administrative proceeding in cases such as this, where an officer suffers only temporary punitive action. Respondents suggest, because Runyan suffered a temporary reassignment rather than a permanent demotion or termination, different procedures were called for than those afforded Binkley, the chief of police who was terminated in *Binkley* v. *City of Long Beach, supra,* 16 Cal.App.4th 1795.

We decline the invitation to establish the administrative process. "The details of administrative appeal under section 3304, subdivision (b) are left to be formulated by the local agency. [Citation.]" (*Binkley* v. *City of Long Beach, supra*, at p. 1806.) We hold only that a meeting with the city manager, in compliance with article VIII, section III, subdivision D.2 of the MOU, is necessary but not sufficient to meet the mandate of the Bill of Rights Act, and that Runyan has a right to an administrative appeal before the civil service commission.

## Disposition

The trial court's issuance of the peremptory writ of mandate is affirmed.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied December 28, 1995, and appellants' petition for review by the Supreme Court was denied February 22, 1996.